## GILBERT SHUGAR v. H.L. GUILL

No. 807SC562

(Filed 21 April 1981)

1. **Damages § 11.1– punitive damages – when recoverable**

    Punitive damages are recoverable in tort actions only where there are allegations and proof of facts showing some aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and willful wrong, insult, indignity or a reckless or wanton disregard of plaintiff's rights.

2. **Damages § 12.1– punitive damages – insufficiency of complaint**

    Plaintiff's complaint alleging that "the defendant, without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff" was insufficient to state a claim for punitive damages since it failed sufficiently to apprise defendant of the facts which plaintiff contended constituted aggravating circumstances entitling him to an award of punitive damages.

3. **Damages § 12.1– pleading punitive damages**

    When a plaintiff's complaint alleges torts other than fraud or torts that, by their very nature, encompass elements of aggravation, his pleading must allege sufficient facts to place his opponent on notice of the aggravating factors extrinsic to the tort itself from which he derives his claim for punitive damages.

4. **Damages § 12.1– punitive damages – assault and battery – necessity for pleading aggravating factors**

    The torts of assault and battery do not by their very nature contain elements of aggravation so that those torts would give rise to a claim for punitive damages without the pleading of additional elements of aggravation.

5. **Assault and Battery § 2– justification for assault and battery – jury question**

    In an action to recover damages allegedly resulting from an assault and battery committed upon plaintiff by defendant, plaintiff's evidence did not establish the defense of justification as a matter of law but presented a jury question as to whether plaintiff gave defendant reasonable grounds to justify plaintiff's ejection from defendant's restaurant where it tended to show that the parties had a dispute over defendant's failure to pay for a piece of formica which plaintiff had permitted a carpenter to use in performing work for defendant; plaintiff went to defendant's restaurant, obtained a cup of coffee, and told defendant to charge it against the amount defendant owed for the formica; plaintiff and defendant engaged in an argument and defendant told plaintiff to leave his restaurant; plaintiff refused to leave and defendant grabbed plaintiff in a bear hug, picked him up, and started moving him toward the restaurant door; plaintiff and defendant exchanged blows; and when a bystander tried to stop the fight, plaintiff dropped his hands, and defendant then struck plaintiff squarely in the face.

Shugar v. Guill

6. **Assault and Battery § 2– basis of dispute between parties – provocation in mitigation of damages**

In an action to recover damages allegedly resulting from an assault and battery committed upon plaintiff by defendant in which the evidence showed that one basis for a dispute between the parties at the time in question was defendant's failure to pay for a piece of formica which plaintiff permitted a carpenter to use in performing work for defendant, testimony by the carpenter concerning the formica was relevant to show provocation in mitigation of plaintiff's compensatory damages, and the trial court erred in limiting the jury's consideration of such testimony to the question of mitigation of punitive damages.

Judge VAUGHN concurring in part and dissenting in part.

APPEAL by defendant from *Bruce, Judge*. Judgment entered 8 February 1980 in Superior Court, EDGECOMBE County. Heard in the Court of Appeals on 23 January 1981.

Plaintiff seeks to recover compensation and punitive damages allegedly resulting from an assault and battery committed upon plaintiff by defendant.

Defendant's pretrial motion to dismiss plaintiff's claim for punitive damages on the ground that plaintiff failed properly to plead that claim was denied.

The evidence presented at trial tended to show the following: In March of 1978, Bobby Long, who had done carpentry work for both plaintiff and defendant, asked plaintiff if he could have a portion of a sheet of formica he knew to be in plaintiff's possession so that he could complete some remodeling work which he was doing for defendant. Mr. Long had just completed a job for plaintiff, and he knew the sheet of formica was left over from that job. Plaintiff allowed Mr. Long to use the piece of formica he had requested. Subsequently, on two different occasions, plaintiff billed defendant for $6.25, the price of the piece of formica. These bills went unpaid. Plaintiff's secretary contacted defendant by telephone with regard to the overdue bill, but payment did not result. Plaintiff did not pursue the matter any further. The question of payment for this piece of formica subsequently became a "sore subject" between plaintiff and defendant.

On 19 October 1978, at approximately 9:25 a.m., plaintiff entered Cotton's Grill. This restaurant was owned and operated by defendant. It was the habit of a group of local businessmen to meet at the restaurant for a coffee break. Several acquain-

tances of both plaintiff and defendant were seated at a table with defendant when plaintiff arrived at the grill. Plaintiff walked to the coffee urn and served himself a cup of coffee. He then proceeded to join his friends and defendant at their table. On the way to the table plaintiff passed the cash register, but he did not leave payment for the coffee on the register because he did not have the correct change. The four seats at the table were already occupied, so plaintiff pulled up a chair at one of the corners for himself, with defendant seated to his right. As he sat down plaintiff said to defendant, "[t]his cup of coffee is on the house." Defendant made some reply to plaintiff's remark, to which plaintiff responded by saying, "[c]harge it against the formica you owe for." Further argumentative remarks were exchanged between the two. Finally, defendant accused plaintiff of being "cheap" and ordered plaintiff to get out of his restaurant. Plaintiff responded by saying "make me." Then defendant, who was a large man, reached around and grabbed plaintiff in a bear hug, picked him up, and started moving him toward the restaurant door. Before reaching the door, plaintiff was able to free himself from defendant's grip. After plaintiff freed himself, he and defendant exchanged blows. A bystander, Louis Perry, tried to intervene and stop the fight. Plaintiff, thinking the struggle was at an end, dropped his hands. Defendant then struck plaintiff squarely in the face. This blow broke plaintiff's nose and caused it to bleed profusely.

Plaintiff's nose was peculiarly sensitive. As a child, he had suffered from a deviated septum which condition had required four operations.

After being struck in the nose plaintiff lost consciousness for a brief period. He was helped to a chair and wet towels were applied to his face. Plaintiff soon recovered sufficiently to leave the restaurant unaided. The entire incident lasted approximately 60 seconds.

Plaintiff was examined that morning by a Tarboro physician who referred him to the specialist in Greenville, North Carolina, who treated him. His nose was straightened, packed, and bandaged. This was a very painful procedure. As a result, plaintiff experienced some loss of breathing capacity. His medical expenses totalled $234.

Shugar v. Guill

The jury returned a verdict in plaintiff's favor. They awarded plaintiff $2000 in compensatory damages and $2500 in punitive damages. The court entered its judgment in like amounts. Defendant appealed from this judgment.

*Fields, Cooper, and Henderson, by Milton P. Fields, for plaintiff appellee.*

*Bridgers and Horton, by Edward B. Simmons, for defendant appellant.*

MORRIS, Chief Judge.

We first examine the questions relating to punitive damages. Defendant made motions, prior to trial, at the close of plaintiff's evidence, and at the close of all the evidence to dismiss plaintiff's claim for punitive damages on the grounds that plaintiff had failed properly to plead or to prove that claim. In each instance the court denied defendant's motion to dismiss. At the close of the trial, the court submitted the issue of punitive damages to the jury, and the jury awarded plaintiff $2500 on that issue.

[1] Punitive damages are recoverable only in tort actions where there are allegations and proof of facts showing some aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and willful wrong, insult, indignity or a reckless or wanton disregard of plaintiff's rights. *VanLeuven v. Motor Lines*, 261 N.C. 539, 135 S.E. 2d 640 (1964); *Hinson v. Dawson* 244 N.C. 23, 92 S.E. 2d 393 (1956); *Lutz Industries, Inc. v. Dixie Home Stores*, 242 N.C. 332, 88 S.E. 2d 333 (1955). In order for a plaintiff to collect punitive damages there must be some additional element of a social behavior which goes beyond the facts necessary to create a simple case of tort.

[2] In this case we are asked to determine whether the allegations of punitive damages contained in plaintiff's pleading were sufficient to withstand defendant's motion to dismiss. We think not.

Plaintiff's complaint reads, in its entirety, as follows:

COMPLAINT

The plaintiff, complaining of the defendant, alleges and says as follows:

1. The plaintiff and defendant are both citizens and residents of Edgecombe County, North Carolina.

2. That on or about the 19th day of October, 1978, the defendant, without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff, inflicting upon him serious and permanent personal injuries thereby causing him to suffer both in body and in mind and that he did aggravate a preexisting injury which has caused the plaintiff additional mental anguish and suffering.

3. Plaintiff has incurred medical bills in an amount not yet determined and he is informed and believes and so alleges that additional expenses will be forthcoming in the future.

WHEREFORE, the plaintiff prays the Court that he have and recover of the defendant the amount of $25,000 as actual damages and the amount of $50,000 as punitive damages, together with the costs of this action.

Plaintiff's only reference in this pleading with regard to his claim for punitive damages consisted of the statement: "the defendant, without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff. ..." This statement standing alone, without further facts to support it, states a mere conclusion of the plaintiff. It fails sufficiently to apprise defendant of the facts which plaintiff contends constitute aggravating circumstances entitling him to an award of punitive damages. A mere conclusory statement that the wrongful act was advanced in a malicious, wanton, or willful manner is insufficient. *Clemmons v. Insurance Co.*, 274 N.C. 416, 163 S.E. 2d 761 (1968), *appeal after remand,* 6 N.C. App. 708, 171 S.E. 2d 87 (1969); *Cook v. Lanier,* 267 N.C. 166, 147 S.E. 2d 910 (1966); *Lutz Industries, Inc. v. Dixie Home Stores,* 242 N.C. 332, 88 S.E. 2d 333 (1955); *Development Corp. v. Alderman-250 Corp.,* 30 N.C. App. 598, 228 S.E. 2d 72 (1976); 25 C.J.S., Damages, § 133, p. 1192-93; 22 Am. Jur. 2d, Damages, § 293, p. 389; 5 Strong, N.C. Index, Damages, § 12.1, p. 33; 1 McIntosh, N.C. Practice 2d, § 1079 (4).

The rule with regard to the necessary sufficiency of the pleading of punitive damages was discussed by Justice Lake in

*Clemmons v. Insurance Co., supra.* There he stated the rule as follows:

> In *Lutz Industries, Inc. v. Dixie Home Stores, supra,* this Court held that allegations in a complaint, designed to support an award of punitive damages, were insufficient for that purpose. The allegation in question was: "That by reason of the unlawful, wanton, wilful and gross negligent conduct of the defendant corporation and its agents and their failure to observe the rules and requirements of the National Electrical Code, and failure to observe the ordinance of the City of Lenoir, that this plaintiff is entitled to recover punitive damages of the defendant corporation in the amount of $50,000." Speaking through Parker, J., now C.J., this Court said that this paragraph of the complaint "merely states conclusions, not facts, and * * * should be stricken."

> Since it is not sufficient, in order to allege a basis for an award of punitive damages, to allege merely that conduct of the defendant's employee was "wanton, wilful and gross," it follows that the insertion in the complaint of such adjectives is not essential to raise an issue of an award for punitive damages. The question is whether the facts alleged in the complaint are sufficient to show the requisite malice, oppression or wilful wrong. As Parker, J., now C.J., said in *Lutz Industries, Inc. v. Dixie Home Stores, supra:* "While it seems that punitive damages need not be specifically pleaded by that name in the complaint, it is necessary that the facts justifying a recovery of such damages be pleaded. 25 C.J.S., p. 758. Though no specific form of allegation is required, the complaint must allege facts showing the aggravating circumstances which would justify the award, for instance, actual malice, or oppression or gross and wilful wrong, or a wanton and reckless disregard of plaintiff's rights."

274 N.C. at 424, 163 S.E. 2d at 767.

The reasoning of the Supreme Court in *Lutz* and *Clemmons* bears directly upon the facts of the case before us on appeal. We are bound to follow the precedent of those decisions. Therefore, we must hold that the plaintiff's pleading in the instant case did not sufficiently allege punitive damages, and defendant's mo-

tion to dismiss the claim for punitive damages should have been granted.

We are mindful that the authorities we have cited predate the new Rules of Civil Procedure which became effective in North Carolina in 1970. However, we think that even under the new Rules the reasoning of these authorities should still obtain with regard to the pleading of punitive damages. Under the former practice a pleader had to be more concerned about setting forth sufficient facts to give the opposing party proper notice and to cover all of the essential elements of the action.

> Under "notice pleading" a statement of a claim is adequate if it gives sufficient notice of the claim asserted "to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought. *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161.

*Roberts v. Memorial Park,* 281 N.C. 48, 56, 187 S.E. 2d 721, 725 (1972).

Unlike punitive damages, compensatory damages are the natural and probable result of the wrongful acts complained of. They arise out of the tort which is the basis of the action. Such natural consequences of the wrongful act need not be pleaded in detail simply because the opponent of the pleading party has been placed on notice of them by being placed on notice of the underlying tort.

Punitive damages, on the other hand, are not awarded as compensation, but they are awarded above and beyond actual damages in proper instances as punishment when it appears that the wrongful act was done maliciously, willfully, wantonly, or in reckless disregard of the plaintiff's rights. *Hardy v. Toler,* 288 N.C. 303, 218 S.E. 2d 342 (1975); *Cavin's Inc. v. Insurance Co.,* 27 N.C. App. 698, 220 S.E. 2d 403 (1975). Punitive damages arise out of the acts or intentions of the tort-feasor which contain any of the elements of aggravation. Punitive damages do not arise automatically from the commission of the tort, but rather they arise from one of the aggravating factors extraneous to the tort. If facts merely necessary to apprise the defendant of the wrongdoing with which the plaintiff's complaint charges him are all that are pleaded, this will not provide the defendant with

the notice to which he is entitled to prepare a responsive pleading or prepare for trial on the issue of punitive damages. Defendant is entitled to some notice from plaintiff's complaint of the extraneous facts from which plaintiff's claim for punitive damages arise. Therefore, we think that under the present system of "notice pleading" plaintiff must do more than make the conclusory allegation that, "defendant, without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff." Plaintiff must allege some facts in his complaint tending to establish one or more of the aggravating factors in order to recover punitive damages.

Plaintiff takes the position that the Supreme Court modified its prior decisions in regard to the pleading of punitive damages in *Newton v. Insurance Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976). Plaintiff contends that in *Newton* the Supreme Court held that the aggravating conduct necessary for an award of punitive damages need not be alleged in the complaint if allegations sufficient to allege the tort, where that tort, by its very nature, encompasses any of the elements of aggravation, are made in the complaint.

We do not think that the Supreme Court intended that its decision in *Newton* be given the broad interpretation urged on us by plaintiff. Rather, we think the better interpretation of *Newton* is to limit its application with regard to the pleading of punitive damages to the tort of fraud.

Plaintiff's action in *Newton* was based in contract. Plaintiff contended that the defendant-insurer had committed acts sufficient to warrant an award of punitive damages by failing to pay the plaintiff's claim for loss by theft and burglary when defendant-insurer knew that the loss had placed plaintiff in a precarious financial position. The Supreme Court held that the trial court properly dismissed the plaintiff's claim for punitive damages, because the loss complained of arose from the alleged breach of contract. The breach of contract represented by defendant-insurer's failure to pay was not alleged to have been accompanied by fraud or any other recognizable tortious behavior. Punitive damages are not awarded in contract actions. Plaintiff's allegations of defendant-insurer's oppressive behavior standing alone were insufficient to show an accompanying tort.

Ancillary to its upholding of the trial court's dismissal of the claim for punitive damages, the Supreme Court in its discussion held that the tort of fraud itself would give rise to a claim for punitive damages without the pleading of additional elements of aggravation. *Newton* indicates that if the tort of fraud is sufficiently alleged in the complaint there is no necessity to allege extraneous aggravating factors in order to seek an award of punitive damages.

Justice Exum, speaking for the Court, illustrated this point as follows:

Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed. *Oestreicher v. Stores, supra; Baker v. Winslow*, 184 N.C. 1, 113 S.E. 570 (1922). Such aggravated conduct was early defined to include "fraud, malice, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness. . . ." *Baker v. Winslow, supra, citing Holmes v. R.R.*, 94 N.C. 318 (3 Davidson) (1886).

The aggravated conduct which supports an award for punitive damages when an identifiable tort is alleged may be established by allegations of behavior extrinsic to the tort itself, as in slander cases. *Cf. Baker v. Winslow, supra; Cotton v. Fisheries Products Co.*, 181 N.C. 151, 106 S.E. 487 (1921). Or it may be established by allegations sufficient to allege a tort where that tort, *by its very nature,* encompasses any of the elements of aggravation. Such a tort is fraud, since fraud is, itself, one of the elements of aggravation which will permit punitive damages to be awarded. *See Saberton v. Greenwald, supra,* which allowed punitive damages for a fraudulent representation that induced the plaintiff to buy an old watch in a new case.

In North Carolina, actionable fraud *by its very nature* involves intentional wrongdoing. As defined by Justice, now Chief Justice, Sharp in *Davis v. Highway Commission,* 271 N.C. 405, 408, 156 S.E. 2d 685, 688 (1967): "'Fraud is a malfeasance, a positive act resulting from a wilful intent to deceive. . . .'" *quoting Walter v. State,* 208 Ind. 231, 241, 195 N.E. 268, 272, 98 A.L.R. 607, 613; 37 C.J.S. Fraud § 1. The

Shugar v. Guill

punishment of such intentional wrongdoing is well within North Carolina's policy underlying its concept of punitive damages. Insofar as *Swinton v. Realty Co., supra,* requires some kind of aggravated conduct in addition to actionable fraud or makes any distinction between "simple" and "aggravated" fraud, permitting punitive damages only for the latter, that case is overruled, as are all cases so holding.

*Newton v. Insurance Co.,* 291 N.C. 105, 112-114, 229 S.E. 2d 297, 301-02 (1976).

[3] Justice Exum's reasoning in *Newton* strongly indicates by implication that the Supreme Court intended to continue to follow the general rules of pleading punitive damages as laid down in *Cook, Clemmons,* and *Lutz, supra,* in cases involving torts other than fraud or torts that, by their very nature, encompass any of the elements of aggravation. The Court chose to restrict its holding to actionable fraud and to leave intact the general rule. When a plaintiff's complaint alleges torts other than those excepted in *Newton,* his pleading must allege sufficient facts to place his opponent on notice of the aggravating factors extrinsic to the tort itself from which he derives his claim for punitive damages.

[4] Plaintiff argues that the torts of assault and battery by their very nature contain elements of aggravation bringing them within the *Newton* exception to the general rule of pleading punitive damages. We disagree. The essential elements of actionable fraud are a material misrepresentation of past or existing fact; the making of it with knowledge of its falsity or in culpable ignorance of its truth; the misrepresentation is made with the intention that it should be acted upon; and it is acted upon by the recipient to his damage. *Cofield v. Griffin,* 238 N.C. 377, 78 S.E. 2d 131 (1953); *Rosenthal v. Perkins,* 42 N.C. App. 449, 257 S.E. 2d 63 (1979). Obviously, fraud must always consist of an intentional and willful positive act by the wrongdoer. This is not necessarily so in the case of assault and battery. An assault is an offer to show violence to a person without actually striking him, and a battery is the actual infliction of the blow without the consent of the person who receives it. *Hayes v. Lancaster,* 200 N.C. 293, 156 S.E. 530 (1931). An assault and battery need not necessarily be perpetrated with the maliciousness, willfulness, or wantonness needed for the recovery of punitive damages.

For the purpose of determining whether punitive damages should be allowed, the word "malice" means that the act done must have been done without right or justifiable cause. *Smith v. Ice Co.*, 159 N.C. 151, 74 S.E. 961 (1912). "Malice as used in reference to exemplary damages is not simply the doing of an unlawful or injurious act; it implies that the act complained of was conceived in the spirit of mischief or of criminal indifference to civil obligations." 22 Am. Jur. 2d, Damages, § 250, p. 341. Similarly, "The terms 'recklessness,' 'wantonness,' and 'willfulness' imply a knowledge and present consciousness that injury must result from a wrongful act done or from a duty omitted. . . . It is, therefore apparent that the intention and the motives with which the act was done are always material and should be inquired into. It follows, further, that exemplary damages are not authorized where a tort is committed unintentionally, through mistake or ignorance, or under duress. . . . Nor can exemplary damages be recovered where there is a reasonable excuse for the defendant, arising from the provocation or fault of the plaintiff, but not sufficient entirely to justify the act done, or where he resists the forcible and unlawful acts of another, unless he is guilty of excess and acts from motives of malice." 22 Am. Jur. 2d, Damages, § 253, p. 346-47. Considering these definitions of the elements of aggravation, it would certainly be possible for the wrongful acts of assault and battery to occur unaccompanied by the aggravating factors. For example, the assault and battery could occur unintentionally, or they could occur following some form of provocation. Therefore, we are of the opinion that the rule of *Newton* does not include this tort.

We are aware of the case of *Stanback v. Stanback*, 297 N.C. 181, 254 S.E. 2d 611 (1979), in which Justice Brock speaking for the Court stated:

> The requirement that there be some element of aggravation to the tortious conduct before punitive damages will be allowed is also met by the allegations of plaintiff's complaint. "Such aggravated conduct was early defined to include 'fraud, *malice*, such a degree of negligence as indicates a reckless indifference to consequences, oppression, insult, rudeness, caprice, wilfulness . . .' *Baker v. Winslow* citing *Holmes v. R.R.*, 94 N.C. 318 (3 Davidson) (1886)." *Newton, supra,* at 112, 229 S.E. at 301. Plaintiff here alleges

that defendant acted wilfully, maliciously, recklessly, and with full knowledge of the consequences which would result from his conduct. She is entitled to have at least the opportunity to prove those allegations.

297 N.C. at 199, 254 S.E. 2d at 623.

We think it was the intention of the Court that this language apply only to the circumstances of this particular case. Prior to this assertion, Justice Brock in the same opinion stated:

The general rule as it has often been stated in the opinions of this Court is that punitive damages are not recoverable for breach of contract with the exception of breach of contract to marry. *Newton v. Standard Fire Ins. Co.*, 291 N.C. 105, 229 S.E. 2d 297 (1976); *Oestreicher v. Stores*, 290 N.C. 118, 225 S.E. 2d 797 (1976); *King v. Insurance Co.*, 273 N.C. 396, 159 S.E. 2d 891 (1968). But when the breach of contract also constitutes or is accompanied by an identifiable tortious act, the tort committed may be grounds for recovery of punitive damages. *Newton v. Insurance Co., supra.* Our recent holdings in this area of the law clearly reveal, moreover, that allegations of an identifiable tort accompanying the breach are insufficient alone to support a claim for punitive damages. In *Newton* the further qualification was stated thusly: "Even where sufficient facts are alleged to make out an identifiable tort, however, the tortious conduct must be accompanied by or partake of some element of aggravation before punitive damages will be allowed." *Newton, supra,* at 112, 229 S.E. 2d at 301. *See* Comment, *Remedies-"Extra-Contractual" Remedies for Breach of Contract in North Carolina*, 55 N.C.L. Rev. 1125 (1977).

297 N.C. at 196, 254 S.E. 2d at 621.

This reinforces our belief that the Supreme Court did not intend in either *Newton* or *Stanback* to hold that in all cases the pleading of only the conclusions that a wrongful act was committed in a malicious, willful or wanton manner be sufficient to allege punitive damages.

Similarly, we think the facts of *Hendrix v. Guin*, 42 N.C. App. 36, 255 S.E. 2d 604 (1979), distinguish our holding in that

case from our decision in the instant case. In *Hendrix* this Court stated:

> Plaintiff also alleges that the conduct of defendant constitutes "a willful, wanton, malicious, reckless, wrongful, rude and forcible trespass to plaintiff's rightful possession of the apartment." These allegations, if supported by evidence to the satisfaction of the jury, would permit the jury to consider an award of punitive damages. (Citations omitted.)

42 N.C. App. at 39, 255 S.E. 2d at 606. Plaintiff's complaint, excerpts of which appear in our opinion in *Hendrix*, show that the plaintiff alleged sufficient facts in his pleading to give the defendant adequate notice of the requisite aggravating factors.

In the instant case, plaintiff's complaint contains no allegations of fact whatsoever to place defendant on notice of any extraneous acts that could form the basis of the claim for punitive damages. Therefore, we find that the trial court's denial of defendant's pretrial motion to dismiss plaintiff's claim for punitive damages was improper, and we vacate the portion of the trial court's judgment with respect thereto.

**[5]** Defendant assigns error to the court's denial of his motions for directed verdict and for judgment notwithstanding the verdict. Defendant contends that plaintiff's evidence established a legal justification for the alleged assault and battery. He argues that under certain conditions a proprietor such as he has a legal right to eject a guest. "[T]he proprietor of a public house has a right to request a person who visits it, not as a guest or on business with guests, to depart, and if he refuse, the innkeeper has a right to lay his hands gently on him and lead him out, and if resistance be made, to employ sufficient force to put him out. For so doing, he can justify his conduct on a prosecution for assault and battery." *State v. Steele*, 106 N.C. 766, 784, 11 S.E. 478, 485 (1890), citing Wharton (1 Crim. Law, § 625); *see Hutchins v. Durham*, 118 N.C. 457, 24 S.E. 723 (1896).

The issue in the instant case as to the defense of justification becomes whether plaintiff gave defendant reasonable grounds to justify plaintiff's ejection from the restaurant. We do not think that under the evidence presented defendant has established the defense of justification as a matter of law. Clearly, we think that this was a matter for the jury.

Shugar v. Guill

[6] Finally, defendant contends that the trial court erred in several portions of its instructions to the jury. First, defendant urges that the trial court should not have instructed the jury to limit its consideration of the testimony of the carpenter Bobby Long to the question of mitigation of punitive damages. Long testified that in January or February of 1978 he was employed by both plaintiff and defendant to do some carpentering and cabinet work. He needed a small piece of formica to finish defendant's job. Long knew plaintiff had such a piece of formica. He contacted plaintiff, and asked if he could use the formica. Plaintiff assented. Plaintiff and Long did not discuss whether or how the price of the piece of the formica was to be charged to the defendant. He and plaintiff never discussed whether defendant would be responsible for the formica. Long testified that plaintiff had not mentioned the formica to him since, nor had he billed him for it. At the conclusion of Long's testimony the trial court instructed the jury that his testimony was to be considered only on the issue of punitive damages and for no other purpose.

Although provocation is not a defense to an action for assault, provocation can be considered in mitigation of plaintiff's damages. *Lewis v. Fountain,* 168 N.C. 277, 84 S.E. 278 (1915); *Frazier v. Glascow,* 24 N.C. App. 641, 211 S.E. 2d 852, *cert. denied,* 286 N.C. 722, 213 S.E. 2d 721 (1975). Defendant's use of plaintiff's piece of formica formed one of the bases of the dispute which erupted between plaintiff and defendant on the morning this incident occurred. Long's testimony furnished the jury with an understanding of the background concerning this disagreement. Therefore, this testimony was relevant to the issue of provocation and the jury should have been allowed to consider it in mitigation of plaintiff's compensatory damages. We think this error entitles defendant to a new trial on the issue of compensatory damages.

Having reached this determination, we find it unnecessary to consider defendant's remaining assignments of error, all of which are directed to the court's instructions to the jury. Accordingly, the judgment of the trial court is vacated with respect to its award of punitive damages and reversed on the issue of compensatory damages. The matter is remanded to the trial court for a new trial on that issue.

Judge BECTON concurs.

Judge VAUGHN concurs in part and dissents in part.

Judge VAUGHN concurring in part and dissenting in part.

I agree that evidence of provocation can be considered in mitigation of compensatory damages as well as punitive damages.

I dissent, however, from the holding that the complaint fails to state a claim upon which punitive damages may be awarded. I believe the allegation

> that on or about the 19th day of October, 1978, the defendant, without just cause, did intentionally, willfully and maliciously assault and batter the plaintiff, inflicting upon him serious and permanent personal injuries thereby causing him to suffer both in body and in mind and that he did aggravate a preexisting injury which has caused the plaintiff additional mental anguish and suffering

is sufficient to notify defendant of the facts which plaintiff contends constitute aggravating circumstances entitling him to the award of punitive damages he seeks in his prayer for relief.